IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| vs. ) | Criminal No. 18-139 |
| ) | Judge Nora Barry Fischer |
| STEPHEN BARNES, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

**I.   INTRODUCTION**

Presently before the Court are Defendant Stephen Barnes's Motion for Compassionate Release, (Docket No. 92), and the Government's Response in opposition, (Docket No. 95). The Court has also received and reviewed medical records submitted by the parties. (Docket Nos. 92-1; 92-2). Defendant seeks to reduce the 75-month sentence imposed by this Court to time served based on his: age of 53; physical health conditions, including obesity, hypertension, and an enlarged prostate; mental health issues; and, the ongoing risks posed by the COVID-19 pandemic. (Docket No. 92). The Government counters that Defendant has failed to meet his burden to demonstrate that a reduction of his sentence is appropriate. (Docket No. 95). After careful consideration of the parties' positions and for the following reasons, Defendant's Motion [92] is denied, as the Court declines to exercise its discretion to reduce his sentence at this time.

**II.   BACKGROUND**

On April 30, 2019, Defendant pled guilty pursuant to a plea agreement with the Government to one count of distribution and possession with intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), for conduct occurring on or about April 4, 2018 (Count Two); and one count of possession with intent to distribute 100

grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(i), for conduct occurring on or about May 11, 2018 (Count Six). He also accepted responsibility for the conduct charged in the other counts of the Indictment including possession with intent to distribute quantities of fentanyl. Defendant was on parole for a murder conviction in the Court of Common Pleas of Philadelphia County at the time of theses offenses and he was in criminal history category III. Prior to sentencing, the Court granted the Government's motion for an upward departure and raised Defendant's criminal history category to IV and the guidelines range to 70-87 months' incarceration, for the reasons set forth in its December 30, 2019 Memorandum Order. (Docket No. 63). At the sentencing on February 18, 2020, the Court denied Defendant's motion for a downward variance as well as the Government's motion for an upward variance and sentenced him to a within-guidelines term of 75 months' incarceration. (Docket No. 72). In doing so, the Court considered all of the § 3553(a) factors, including Defendant's arguments concerning his difficult upbringing and abuse suffered as child, mental and emotional health conditions, physical ailments, and post-offense rehabilitation efforts while incarcerated, such as his completion of the Go Further Program at NEOCC. (*See* Docket No. 58).

Defendant filed an initial motion for compassionate release in August of 2020 while he remained incarcerated at the NEOCC. (Docket No. 74). He was transferred to FCI Loretto in September of 2020 and the Court denied his motion, without prejudice, for failure to exhaust administrative remedies. (Docket No. 90). Defendant remains incarcerated at FCI Loretto and the BOP currently reports that his projected release date is September 5, 2023. Defendant now seeks to reduce his federal sentence to time served so that he can be transferred to state custody to address his parole violations. The motion has been sufficiently briefed and is now ripe for disposition.

### III. LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. *See United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020). To obtain relief under § 3582, a defendant must request that "the Director of the Bureau of Prisons" seek a reduction of the defendant's sentence on the defendant's behalf. § 3582(c)(1)(A). A defendant may file a motion before the sentencing court on his own behalf. if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). Assuming a defendant's motion is properly before the sentencing court, "a prisoner's motion may be granted if the court finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a)," to the extent they are applicable. *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021).

### IV. DISCUSSION

The parties dispute whether Defendant has met his burden to show each of the relevant factors, i.e., administrative exhaustion; extraordinary and compelling reasons justifying his release; and, whether his release is warranted after considering all of the § 3553(a) factors. The Court will discuss each contested element, in turn.

## A. Administrative Exhaustion

As to administrative exhaustion, the Court of Appeals has held that a defendant is not required to fully exhaust all administrative appeals prior to bringing a motion before the sentencing court and emphasized that "the statute [alternatively provides] that the defendant may file the motion thirty days after the warden receives his request." *Harris*, 973 F.3d at 171. That standard has been met here. To that end, Defendant sent the Warden at FCI Loretto an email request for compassionate release on June 18, 2022 and his motion dated July 21, 2022 was submitted to this Court more than 30 days later. (Docket No. 92-1 at 1). Defendant did not receive a specific denial from the Warden, as the only response he received directed him to "Please see AW Brawley at mainline." (*Id*.). The Government relies upon a number of District Court cases from outside the Third Circuit and contends that Defendant cannot show proper exhaustion without proof that he followed the instruction to speak with AW Brawley. (Docket No. 95). However, in light of the Court of Appeals' decision in *Harris*, the Court agrees with the Defendant that proof of his June 18, 2022 request to the Warden at FCI Loretto is sufficient evidence of administrative exhaustion. *See Harris*, 973 F.3d at 171; *see also United States v. Wanda Solomon*, Criminal No. 05-350, Docket No. 331 (W.D. Pa. Feb. 7, 2022). Thus, it will further analyze the substantive merits of Defendant's motion.

## B. Extraordinary and Compelling Reasons

The Court next finds that Defendant has not demonstrated that "extraordinary and compelling" reasons warrant a reduction in his sentence. The Third Circuit Court of Appeals has approved of District Courts consulting "the text, dictionary definitions, and the policy statement" provided by the United States Sentencing Commission to interpret what constitutes an "extraordinary and compelling" reason for a reduction in a sentence. *Andrews*, 12 F.4th at 260. As

4

relevant here, the Sentencing Commission has declared that a defendant who "suffer[s] from a serious physical or medical condition" could have an extraordinary and compelling reason for a reduction in sentence. U.S.S.G. § 1B1.13 app. 1(A)(ii). Defendant contends that his medical conditions, which include obesity, hypertension, and benign prostatic hyperplasia ("BPN") (an enlarged prostate), along with his age of 53 and prior COVID-19 diagnosis, leave him at risk for severe symptoms if reinfected. (*See* Docket Nos. 92; 92-1; 92-2). He further maintains that his mental health conditions including childhood abuse and trauma have been exacerbated by the jail conditions during the COVID-19 pandemic. (*Id.*).

In the Court's view, Defendant has not established "extraordinary and compelling" grounds for a sentence reduction. The Court of Appeals has reasoned that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597. Although the Court recognizes that there was a prior outbreak of COVID-19 cases at FCI Loretto, the BOP is currently reporting no active COVID-19 positive cases among inmates, and one active positive case among staff members. *See* https://www.bop.gov/coronavirus/ (last visited 9/7/2022). As such, the present conditions at the facility do not support Defendant's motion for compassionate release.

With respect to Defendant's reported physical ailments, the Centers for Disease Control and Prevention ("CDC") notes that obesity increases the likelihood of severe illness accompanying a COVID-19 diagnosis, and that "[t]he risk of severe COVID-19 illness increases sharply with elevated BMI." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed 8/31/2022). On the other hand, the CDC has not definitely linked hypertension to severe effects from COVID-19, but instead cautions that high

5

blood pressure can "possibly" cause a person to be "more likely to become very sick from COVD-19." *Id*. Moreover, neither Defendant's age of 53, nor his BPN diagnosis, place him at a severe risk of complications from COVID-19. *See id*. While Defendant's hypertension[1] and low-level obesity[2] may put him at higher risk of a severe case of COVID-19, the medical records show that such conditions are under control and well-monitored and Courts have repeatedly found that such ailments do not warrant compassionate release. *See e.g.*, *United States v. Ramsey*, No. 22-1346, 2022 WL 2964792, at *1 (3d Cir. July 27, 2022) (affirming District Court's rejection of the defendant's "repeated claim that he has an increased risk of COVID complications due to his hypertension and obesity"); *cf. United States v. Drue Williams, III*, Crim No. 16-181, Docket No. 538 (W.D. Pa. Nov. 5, 2020), *aff'd*, Appeal No. 20-3400, 2021 WL 1573788 --- F. App'x --- (3d Cir. Apr. 22, 2021) (affirming denial of compassionate release based on Defendant's obesity); *cf. United States v. Garriton Jones*, Criminal No. 15-87, Docket No. 3257 (W.D. Pa. Apr. 26, 2021) (denying compassionate release for a prisoner based on obesity and pre-diabetes); *cf. United States v. Stevenson*, 2021 WL 8471333, Crim. No. 16-189 (W.D. Pa. Jan 22, 2021) (denying compassionate release to a prisoner with underlying conditions of asthma, hypertension, and obesity).

---

[1] Defendant's high blood pressure was first documented during a medical examination and physical on September 15, 2020, and he was diagnosed with hypertension and prescribed medication to treat same on October 30, 2020. (Docket No. 92-2 at 6-7; 28). Defendant's condition has been monitored by the medical staff at FCI Loretto since his diagnosis, and the treatment records indicate that he is compliant with taking his medication and that he has met his blood pressure goal. (Docket No. 92-1 at 24-26).

[2] Defendant's medical records reflect that on September 22, 2021, he weighed 225 lbs. and his Body Mass Index ("BMI") was measured at 32, which places Defendant above the bottom threshold for obesity. (Docket No. 92-1 at 43). Though the Defendant's BMI was not recalculated during subsequent visits, the records demonstrate that he has maintained or lost weight since his BMI was measured in September of 2021, as he weighed 221 lbs. on March 22, 2022 and 217 lbs. on April 1, 2022. (Docket No. 92-1 at 24; 26).

Next, despite his reported ailments, Defendant's medical records reveal that he quickly recovered from a prior COVID-19 diagnosis in December of 2020 and has declined to be vaccinated since that time. In this regard, Defendant was "asymptomatic" on the date of his COVID-19 diagnosis and did not suffer grave illness or require hospitalization. (Docket No. 92-2 at 56). Further, he was closely monitored during his illness, and repeatedly denied "cough, shortness of breath, fatigue, body aches, sore throat, diarrhea, headache, loss of taste or smell, nausea or vomiting" or other severe symptoms. (*See id.* at 37-45). Defendant's previous COVID-19 infection was marked as resolved on December 9, 2020, and he does not contend, nor do his treatment records show, that he suffers from any residual effects from same. (*Id.* at 51). Since Defendant has recovered from a COVID-19 diagnosis, he has the benefit of natural immunity. *See Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021) (explaining that natural immunity removes the "imminent risk of serious physical injury" from again contracting COVID-19 and that the widespread availability of vaccines "'eliminates' need for compassionate release" (citation omitted)).

Additionally, Defendant refused the Pfizer-BioNTech COVID 19 vaccination when offered on March 10, 2021 and has declined vaccination since that time. (*Id.* at 57). As the Third Circuit Court of Appeals has stated, "[t]he glaring consensus among district courts is that refusal of a COVID-19 vaccine subverts a defendant's compassionate release motion." *United States v. Thomas*, No. 21-2105, 2022 WL 296594, at *2 (3d Cir. Feb. 2, 2022) (quoting *United States v. Sawyers*, 15-cr-00070, 2021 WL 2581412, at *4 (C.D. Cal. June 22, 2021)); *see also United States v. Broadfield*, 5 F.4th 801, 802 (7th Cir. 2021) ("When [the defendant] filed his application for compassionate release, and when the district judge denied it, COVID-19 was a grave problem in America's prisons, where people cannot engage in social distancing. Today, however, effective

7

vaccines are available."). This Court has likewise denied compassionate release to prisoners who have declined to avail themselves of the protections that vaccination provides. *See, e.g., United States v. Angelo Everett*, Criminal No. 16-195, Docket No. 686 (W.D. Pa. May 13, 2021); *cf. United States v. Estevez-Ulloa*, 2022 WL 1165771 (3d Cir. 2022) (unpublished) (finding no abuse of discretion where a District Court denied compassionate release to an inmate with obesity and hypertension who refused to receive the COVID-19 vaccination).

Finally, as to Defendant's mental and emotional health conditions, the Court previously considered the impact of his reported traumatic childhood experiences when fashioning the instant sentence. (*See, e.g.* Docket Nos. 48 at ¶ 58; 58). Defendant fails to present any additional medical documentation relating to his mental health conditions or otherwise show that he has sought treatment for the same while incarcerated at FCI Loretto. (*See* Docket Nos. 92; 92-1; 92-2). Indeed, the medical records from the BOP indicate that Defendant reported: no current mental health concerns; no history of mental health or emotional issues; and, no prior treatment or care from a mental health professional. (*See* Docket No. 92-2 at 12-18, 23). Since Defendant's mental and emotional health conditions have not required treatment during his incarceration, they cannot serve as an appropriate basis for compassionate release. *See, e.g United States v. Wilkerson*, Crim. No. 18-109, Docket No. 138 (W.D. Pa. June 14, 2022) (denying compassionate release to inmate who did not present evidence of current treatment for mental and emotional health conditions while incarcerated)

For these reasons, Defendant has failed to show that he "suffers from a terminal illness or an ailment, which, coupled with the potential spread of COVID-19, would make him unable to provide self-care in a correctional environment." *United States v. Wallace*, Crim. No. 19-49, Civ. No. 20-637, 2020 WL 4003663, at *4 (W.D. Pa. Jul. 15, 2020) (citing *United States v. Hammond*,

Crim. No. 18-184, 2020 WL 2126783, at *4 (W.D. Pa. May 5, 2020)*)*. Therefore, it is this Court's opinion that Defendant has not proven that extraordinary or compelling circumstances justify his early release.

### C. Section 3553(a) Factors

Even if Defendant had met his burden to show extraordinary and compelling reasons for release, the risks presented by his medical conditions and the COVID-19 pandemic do not outweigh the other § 3553(a) factors supporting the 75-month term of incarceration in his case, of which he has served approximately 52 months to this point. *See Pawlowski*, 967 F.3d at 330 ("we cannot conclude that the District Court acted unreasonably in determining that the substantial sentencing reduction required for granting compassionate release here—a reduction from 15 years to less than two years—would be inconsistent with the § 3553(a) factors."). The Court has once again carefully considered all of the § 3553(a) factors and finds that Defendant's "history and characteristics" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, … to provide just punishment for the offense[, and] to afford adequate deterrence to criminal conduct," do not justify a sentence reduction here. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)-(B). In this Court's estimation, such sentence remains fair and appropriate, for the reasons previously detailed at the sentencing hearing.

Neither party appealed the length of the sentence, and the Court believes that such sentence remains sufficient, but not greater than necessary to meet all of the goals of sentencing in this case. *See* 18 U.S.C. § 3553(a)(1). The 75-month sentence accounts for the gravity of the offense conduct, as Defendant, already a convicted felon with a very serious criminal history and who was on parole from a prior murder conviction at the time of the instant offenses, pled guilty to possession with intent to distribute controlled substances and was involved with substantial quantities of cocaine, heroin, and fentanyl, all of which are dangerous and potent narcotics.

To his credit, Defendant accepted responsibility for his conduct by pleading guilty and acknowledged the wrongfulness of his actions at the sentencing hearing. As the Court learned at that time, Defendant worked as a laundry clerk while incarcerated and completed a long list of programming offered to inmates, including the Go Further Reentry Program, among others. (*See* Docket No. 58). It appears that he has continued in his post-offense rehabilitation while incarcerated at FCI Loretto, where he has completed courses such as: Roots of Human Behavior; Money Smart for Adults; ACT WorkKeys National Career Readiness Certification; Anger Management; Non-Residential Drug Treatment; Basic Cognitive Skills; and, the National Parenting program. (Docket No 92-1 at 2-15). Such efforts are commendable.

However, there remains a need to deter Defendant from committing additional crimes. His prior convictions for other serious offenses, including murder and aggravated robbery with a firearm, among others, which resulted in sentences to include placement at a juvenile detention facility, probationary terms, and significant periods of imprisonment, were insufficient to dissuade him from engaging in further criminal conduct, such as the distribution of very dangerous controlled substances like crack cocaine, heroin, and fentanyl. *See* 18 U.S.C. § 3553(a)(2); *see also* 18 U.S.C. § 3142(g). This Court has repeatedly observed that drug trafficking poses a substantial risk of harm to the community. *See, e.g.*, *United States v. Atkins*, 2015 WL 4920831, at *7 (W.D. Pa. Aug. 18, 2015). Accordingly, it appears to the Court that there remains a clear need to deter Defendant from committing additional crimes under 18 U.S.C. § 3553(a)(2)(B), and that Defendant's repeated criminal behavior shows that he continues to pose a significant threat to the community under 18 U.S.C. § 3553(a)(2)(C). Finally, the 75-month sentence provides general deterrence to others and also promotes respect for the law, while a sentence reduction to time

served (or 52 months) "would be inconsistent with the section 3553(a) factors." *Pawlowski*, 967 F.3d at 330.

### V. CONCLUSION

For all of these reasons, IT IS HEREBY ORDERED that Defendant's Motion seeking compassionate release [92] is DENIED.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Date:   September 12, 2022

cc/ecf:  All counsel of record.

    Stephen Barnes
    BOP # 51442-060
    FCI Loretto
    P.O. Box 1000
    Cresson, Pa 16630
    (via first class mail)